UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Violet G., | Case No. 21-cv-2105 (TNL) |
| Plaintiff, | |
| v. | **ORDER** |
| Kilolo Kijakazi,<br>Acting Commissioner of Social Security, | |
| Defendant. | |

Clifford Michael Farrell, Manring & Farrell, P.O. Box 15037, 167 North High Street, Columbus, OH 43215-0037; and Edward C. Olson, Reitan Law Office, 80 South Eighth Street, Suite 900, Minneapolis, MN 55402 (for Plaintiff); and

Ana H. Voss, Assistant United States Attorney, 300 South Fourth Street, Suite 600, Minneapolis, MN 55415; and James D. Sides and Michael Moss, Special Assistant United States Attorneys, Social Security Administration, 6401 Security Boulevard, Baltimore, MD 21235 (for Defendant).

## I. INTRODUCTION

Plaintiff Violet G. brings the present case, contesting Defendant Commissioner of Social Security's denial of her applications for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.*, and supplemental security income ("SSI") under Title XVI of the same, 42 U.S.C. § 1381 *et seq.* The parties have consented to a final judgment from the undersigned United States Magistrate Judge in accordance with 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, and D. Minn. LR 72.1(c).

1

This matter is before the Court on the parties' cross motions for summary judgment. ECF Nos. 22, 24. Being duly advised of all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Plaintiff's Motion for Summary Judgment, ECF No. 22, is **GRANTED IN PART** and **DENIED IN PART**[1]; the Commissioner's Motion for Summary Judgment, ECF No. 24, is **DENIED**; and this matter is remanded to the Social Security Administration for further proceedings.

## II. PROCEDURAL HISTORY

Plaintiff applied for DIB and SSI asserting that she has been disabled since January 2017 due to epilepsy, memory issues, pseudo seizures, anxiety, and depression. Tr. 31, 85-86, 103-04, 125-26, 143-44. Plaintiff's applications were denied initially and again upon reconsideration. Tr. 31, 101, 119, 121, 124, 142, 160-61, 163.

Plaintiff appealed the reconsideration of her DIB and SSI determinations by requesting a hearing before an administrative law judge ("ALJ"). Tr. 31, 187-88. The ALJ held a hearing in July 2020, and issued an unfavorable decision. Tr. 31, 49, 56, 58; *see generally* Tr. 31-49, 58-84. Plaintiff requested review from the Appeals Council, which was denied. Tr. 1-5.

Plaintiff then filed the instant action, challenging the ALJ's decision. *See generally* Compl., ECF No. 1. The parties have filed cross motions for summary judgment. ECF Nos. 22, 24. This matter is now ready for a determination on the papers.

---

[1] To the extent Plaintiff "requests that this Court reverse the decision of the Commissioner and order immediate payment of Social Security disability benefits," her motion is denied. Pl.'s Mem. in Supp. at 19, ECF No. 23; *see also* Pl.'s Reply at 4, ECF No. 26.

## III. ALJ'S DECISION

In relevant part, the ALJ found that Plaintiff had the severe impairments of seizure disorder, pseudo-seizure disorder, psychotic disorder, major depressive disorder, generalized anxiety disorder, panic attacks, conversion disorder, and post-traumatic stress disorder, and none of these impairments individually or in combination met or equaled a listed impairment in 20 C.F.R. pt. 404, subpt. P, app. 1.  Tr. 34-37.  The ALJ found that Plaintiff had the residual functional capacity to do light work[2] with the following postural and environmental limitations: "never climbing ladders, ropes or scaffolds; no commercial driving; no exposure to dangers to life or limb in the workplace; no exposure to vibrating objects or surfaces in completing tasks; and not required to work in high, exposed places."  Tr. 37.  Additionally,

> [w]ith regard to concentration, persistence and pace, . . . [Plaintiff was] limited to occasional changes in work setting; no public interaction; brief and superficial interaction with supervisors and co-workers meaning[] the 5th digit of the [*Dictionary of Occupational Titles*] code is an "8"; no complex decision-making; and no rapid, assembly-line paced work (daily quotas but not hourly quotas).

Tr. 37.

---

[2]
> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. § 404.1567(b); 20 C.F.R. § 416.967(b) (same).

3

Based on Plaintiff's age, education, work experience, residual functional capacity, and the testimony of a vocational expert, the ALJ found that Plaintiff was capable of performing the representative jobs of garment bagger, tagger, and cleaner. Tr. 48; *see* Tr. 77. Accordingly, the ALJ concluded that Plaintiff was not disabled. Tr. 48-49.

## IV. ANALYSIS

This Court's "task is to determine whether the ALJ's decision complies with the relevant legal standards and is supported by substantial evidence in the record as a whole." *Lucus v. Saul*, 960 F.3d 1066, 1068 (8th Cir. 2020) (quotation omitted); *accord Kraus v. Saul*, 988 F.3d 1019, 1024 (8th Cir. 2021); *see also Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "Legal error may be an error of procedure, the use of erroneous legal standards, or an incorrect application of the law." *Lucus*, 960 F.3d at 1068 (quotation omitted).

"Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations." *Biestek*, 139 S. Ct. at 1154 (quotation omitted). "[T]he threshold for such evidentiary sufficiency is not high." *Id.* "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted); *see, e.g.*, *Chismarich v. Berryhill*, 888 F.3d 978, 979 (8th Cir. 2018) (defining "substantial evidence as less than a preponderance but enough that a reasonable mind would find it adequate to support the conclusion" (quotation omitted)).

4

This standard requires the Court to "consider both evidence that detracts from the [ALJ's] decision and evidence that supports it." *Boettcher v. Astrue*, 652 F.3d 860, 863 (8th Cir. 2011); *see Grindley v. Kijakazi*, 9 F.4th 622, 627 (8th Cir. 2021). The ALJ's decision "will not [be] reverse[d] simply because some evidence supports a conclusion other than that reached by the ALJ." *Boettcher*, 652 F.3d at 863; *accord Grindley*, 9 F.4th at 627; *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012). "The court must affirm the [ALJ's] decision if it is supported by substantial evidence on the record as a whole." *Chaney v. Colvin*, 812 F.3d 672, 676 (8th Cir. 2016) (quotation omitted). Thus, "[i]f, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Perks*, 687 F.3d at 1091 (quotation omitted); *accord Chaney*, 812 F.3d at 676.

Disability benefits are available to individuals who are determined to be under a disability. 42 U.S.C. §§ 423(a)(1), 1381a; *accord* 20 C.F.R. §§ 404.315, 416.901. An individual is considered to be disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *accord* 42 U.S.C. § 1382c(a)(3)(A); *see also* 20 C.F.R. §§ 404.1505(a), 416.905(a). This standard is met when a severe physical or mental impairment, or impairments, renders the individual unable to do her previous work or "any other kind of substantial gainful work which exists in the national economy" when taking into account her age, education, and work

5

experience. 42 U.S.C. § 423(d)(2)(A); *accord* 42 U.S.C. § 1382c(a)(3)(B); *see also* 20 C.F.R. §§ 404.1505(a), 416.905(a).

Disability is determined according to a five-step, sequential evaluation process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

> To determine disability, the ALJ follows the familiar five-step process, considering whether: (1) the claimant was employed; (2) she was severely impaired; (3) her impairment was, or was comparable to, a listed impairment; (4) she could perform past relevant work; and if not, (5) whether she could perform any other kind of work.

*Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010). In general, the burden of proving the existence of disability lies with the claimant. 20 C.F.R. §§ 404.1512(a), 416.912(a).

Plaintiff asserts that the ALJ erred in determining her residual functional capacity by not properly considering the opinion of Deanna Dickens, MD, in accordance with the relevant regulations.

### A. Residual Functional Capacity

A claimant's "residual functional capacity is the most [she] can do despite [her] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1) (same); *see McCoy v. Astrue*, 648 F.3d 605, 614 (8th Cir. 2011) ("A claimant's [residual functional capacity] represents the most he can do despite the combined effects of all of his credible limitations and must be based on all credible evidence."); *see also, e.g.*, *Schmitt v. Kijakazi*, 27 F.4th 1353, 1360 (8th Cir. 2022). "Because a claimant's [residual functional capacity] is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the

6

claimant's ability to function in the workplace." *Perks*, 687 F.3d at 1092 (quotation omitted); *accord Schmitt*, 27 F.4th at 1360.

At the same time, the residual-functional-capacity determination "is a decision reserved to the agency such that it is neither delegated to medical professionals nor determined exclusively based on the contents of medical records." *Norper v. Saul*, 964 F.3d 738, 744 (8th Cir. 2020); *see Perks*, 687 F.3d at 1092; *see also* 20 C.F.R. §§ 404.1546(c), 416.946(c). "An ALJ determines a claimant's [residual functional capacity] based on all the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of [his or her] limitations." *Combs v. Berryhill*, 878 F.3d 642, 646 (8th Cir. 2017) (quotation omitted); *accord Schmitt*, 27 F.4th at 1360; *Norper*, 964 F.3d at 744-45. As such, there is no requirement that a residual-functional-capacity determination "be supported by a specific medical opinion." *Schmitt*, 27 F.4th at 1360 (quotation omitted). Nor is an ALJ "limited to considering medical evidence exclusively." *Id.* (quotation omitted). Accordingly, "[e]ven though the [residual-functional-capacity] assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner." *Perks*, 687 F.3d at 1092 (quotation omitted); *accord Schmitt*, 27 F.4th at 1360; *see* 20 C.F.R. §§ 404.1546(c), 416.946(c). Plaintiff bears the burden to establish her residual functional capacity. *Mabry v. Colvin*, 815 F.3d 386, 390 (8th Cir. 2016).

### B.  Dr. Dickens

Dr. Dickens saw Plaintiff for evaluation and treatment of epilepsy, non-epileptic events, and seizures. *See, e.g.*, Tr. 533-83, 892-900, 1047-55. Dr. Dickens submitted a

medical source statement regarding Plaintiff's seizures. *See generally* Tr. 963-68. Dr. Dickens listed Plaintiff's diagnoses as epilepsy, non-epileptic events, anxiety, and post-traumatic stress order. Tr. 963. Plaintiff experienced both "[c]omplex partial evolving to generalized" seizures (approximately one every four to six months) and "non-epileptic seizures" (approximately two to three per week). Tr. 963. A typical seizure for Plaintiff lasted between three and four minutes. Tr. 963. Stress, depression, and sleep deprivation were precipitating factors. Tr. 964. Dr. Dickens opined that when Plaintiff experiences a seizure, she needs to "[p]ut something soft under [her] head," "[r]emove [her] glasses," "[l]oosen tight clothing," and "[c]lear the area of hard or sharp objects." Tr. 964. Plaintiff's seizures could also result in confusion and irritability. Tr. 964.

In relevant part, Dr. Dickens opined that Plaintiff's seizures would likely disrupt her coworkers and Plaintiff would need more supervision than other workers. Tr. 966. Plaintiff could not work at heights or with power machinery. Tr. 966; *see also* Tr. 967 ("cannot operate hazardous machinery"). Dr. Dickens also opined that Plaintiff could not drive for 90 days after she had a seizure. Tr. 966.

Dr. Dickens opined that Plaintiff was "[c]apable of low stress jobs," noting that "if the job was repetitive she may be able to perform." Tr. 966. Dr. Dickens opined that Plaintiff had no or mild limitation in her abilities to "[c]arry out very short and simple instructions"; "[p]erform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances"; and "[s]ustain an ordinary routine without special supervision." Tr. 967. Dr. Dickens additionally opined that Plaintiff had moderate limitation in her abilities to "[u]nderstand and remember very short and simple

instructions" and "[m]ake simple work-related decisions." Tr. 967. Dr. Dickens further opined that Plaintiff had marked limitation in her abilities to "work in coordination with, or proximity to, others without interrupting or distracting them" and "[r]espond appropriately to changes in the work setting." Tr. 967. Dr. Dickens opined that Plaintiff was extremely limited in her "[a]bility to set realistic goals or make plans independently of others." Tr. 967. Lastly, Dr. Dickens opined that Plaintiff was likely to be absent one day per month due to her impairments or treatment. Tr. 967.

### C. Consideration of Medical Opinions

Plaintiff's applications were filed in January 2019. *See, e.g.*, Tr. 31. Accordingly, the evaluation of opinion evidence is governed by the criteria set forth in 20 C.F.R. §§ 404.1520c and 416.920c. *See Austin v. Kijakazi*, 52 F.4th 723, 728 & n.2 (8th Cir. 2022) (noting "recently revised regulations" "apply to all claims filed on or after March 27, 2017"); *cf.* 20 C.F.R. §§ 404.1527, 416.927 (evaluating opinion evidence for claims filed before March 27, 2017). Under the relevant regulations, Dr. Dickens' opinion is not entitled to special deference. *Bowers v. Kijakazi*, 40 F.4th 872, 875 (8th Cir. 2022); *see* 20 C.F.R. §§ 404.1520c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources."), 416.920c(a) (same).

> Instead, ALJs evaluate the persuasiveness of medical opinions by considering (1) whether they are supported by objective medical evidence, (2) whether they are consistent with other medical sources, (3) the relationship that the source has with the claimant, (4) the source's specialization, and (5) any other relevant factors.

9

*Bowers*, 40 F.4th at 875; *accord Austin*, 52 F.4th at 728; *see generally* 20 C.F.R. §§ 404.1520c(c), 416.920c(c) (listing factors).

"The first two factors—supportability and consistency—are the most important." *Bowers*, 40 F.4th at 875; *accord Austin*, 52 F.4th at 723; *see* 20 C.F.R. §§ 404.1520c(a), (b)(2), 416.920c(a), (b)(2). With respect to supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . , the more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1); 20 C.F.R. § 416.920c(c)(1) (same). As for consistency, "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." 20 C.F.R. § 404.1520c(c)(2); 20 C.F.R. § 416.920c(c)(2) (same). The regulations provide that the ALJ "*will* explain how [he or she] considered the supportability and consistency factors for a medical source's opinions in [the] . . . decision." 20 C.F.R. § 404.1520c(b)(2) (emphasis added); 20 C.F.R. § 416.920c(b)(2) (same); *see, e.g.*, *Bonnett v. Kijakazi*, 859 F. App'x 19, 20 (8th Cir. 2021) (per curiam) ("ALJ must explain how both supportability and consistency factors are considered"); *Susan H. v. Kijakazi*, No. 21-cv-2688 (ECT/ECW), 2023 WL 2142786, at *2 (D. Minn. Feb. 21, 2023) ("An ALJ must explain how both the consistency and supportability elements were considered and evaluated."); *Michael B. v. Kijakazi*, No. 21-cv-1043 (NEB/LIB), 2022 WL 4463901, at *1 (D. Minn. Sept. 26, 2022) ("An ALJ must therefore explain how he or she considered the supportability and consistency factors for a medical source's medical opinions in the claimant's determination or decision." (quotation

10

omitted)); *Joel M. B. v. Kijakazi*, No. 21-cv-1660 (PAM/ECW), 2022 WL 1785224, at *3 (D. Minn. June 1, 2022) ("The ALJ is required to address both supportability and consistency with respect to a medical opinion, and offer good reasons for his determination on those issues." (quotation omitted)).

### D. Consideration of Dr. Dickens' Opinion

As to the persuasiveness of Dr. Dickens' opinion, the ALJ wrote:

> I also considered the opinion of Deanna Dickens, MD. Dr. Dickens identified the same frequency of nonepileptic and generalized seizures as [the testifying medical expert]. She noted [Plaintiff's] laboratory workups as being at therapeutic level for medications. She indicated [Plaintiff's] inability to drive for 90 days after a seizure activity. She noted [Plaintiff's] inability to operate hazardous machinery. She opined [Plaintiff] as being capable of performing low stress jobs. Specifically, she noted, "if the job was repetitive she may be able to perform." Dr. Dickens further opined marked and extreme limitations in a number of work-related mental activities and one day of absence from work due to [Plaintiff's] impairment(s) and treatment. I find persuasive Dr. Dickens' opinion as to seizure precautions, which are fully supported by the medical evidence of record. Her opinion however as to monthly absenteeism and marked/extreme limitations are [sic] not supported by the record and are [sic] not persuasive.

Tr. 42 (citations omitted).

Plaintiff asserts that, when considering the persuasiveness of Dr. Dickens' opinion, the ALJ erred by failing to address the supportability[3] factor entirely and to

---

[3] The parties agree that, although the ALJ framed his analysis in terms of supportability, the ALJ was actually addressing the consistency factor, looking at how consistent Dr. Dickens' opinion was with other medical evidence in the record. *See* 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2); *see also* Pl.'s Mem. in Supp. at 14 ("Technically, the ALJ improperly addressed the consistency factor by stating that Dr. Dickens' opinions were partly supported by the evidence of record."), 16 ("[T]he ALJ barely addressed the consistency factor when he claimed that some of Dr. Dickens' opinions were supported by the medical evidence of record and some of her opinions were not supported by the medical evidence of record."); Comm'r's Mem. in Supp. at 10 ("The Commissioner acknowledges that in

11

address adequately the consistency factor. The Commissioner does not dispute that the ALJ "did not separately address" the supportability of Dr. Dickens' opinion. Def.'s Mem. in Opp'n at 10; *see also id.* at 13 ("The Commissioner concedes that it would have been preferable for the ALJ to better explain his consideration of the supportability and consistency of Dr. Dickens' opinion[] in addressing [its] persuasiveness."). The Commissioner contends, however, that any error was harmless.

The Eighth Circuit Court of Appeals has held that the failure to comply with the relevant regulations is legal error. *Lucus*, 960 F.3d at 1070. In *Bonnett*, the Eighth Circuit confronted an analogous situation in which the ALJ evaluated the supportability factor when considering the opinion of the claimant's physician, but did not address the consistency factor as required under the regulations. 859 F. App'x at 20. The Eighth Circuit held that legal error occurred and remanded the case for further evaluation of the physician's opinion. *Id.*

Courts in this District, the Eighth Circuit, and elsewhere have similarly concluded that the failure to address or adequately explain either the supportability or consistency factors (or both) when evaluating the persuasiveness of a medical opinion warrants remand. *E.g.*, *Susan H.*, 2023 WL 2142786, at *3 (both); *Michael B.*, 2022 WL 4463901, at *2 (supportability); *Joel M. B.*, 2022 WL 1785224, at *3 (both); *see, e.g.*, *Maxwell v. Kijakazi*, No. 3:20-cv-00408 PSH, 2021 WL 5998018, at *2 (E.D. Ark. Dec. 20, 2021) (consistency); *Guess v. Kijakazi*, No. 4:20-CV-887-JTR, 2021 WL 5983193, at *4 (E.D.

---

referencing whether Dr. Dickens' opinion[s] were or were not 'supported by the record,' th[e] ALJ instead was addressing their 'consistency' with the evidence from other medical and non-medical sources . . . ."), ECF No. 25.

Ark. Dec. 17, 2021) (both); *Bonneau v. Saul*, No. 3:20-cv-0095 PSH, 2021 WL 920981, at *5-6 (E.D. Ark. Mar. 10, 2021) (supportability); *Crews v. Kijakazi*, No. 4:20-CV-01836-NCC, 2022 WL 4130793, at *3-4 (E.D. Mo. Sept. 12, 2022) (both); *Hirner v. Saul*, No. 2:21-CV-38 SRW, 2022 WL 3153720, at *8 (E.D. Mo. Aug. 8, 2022) (supportability); *Martini v. Kijakazi*, No. 4:20 CV 1711 CDP, 2022 WL 705528, at *5 (E.D. Mo. Mar. 9, 2022) (supportability); *Pipkins v. Kijakazi*, No. 1:20 CV 161 CDP, 2022 WL 218898, at *4-5 (E.D. Mo. Jan. 25, 2022) (both); *Starman v. Kijakazi*, No. 2:20-cv-00035-SRC, 2021 WL 4459729, at *4-5 (E.D. Mo. Sept. 29, 2021) (supportability); *see also, e.g.*, *Price v. Kijakazi*, No. 6:21-cv-1345-EJK, 2022 WL 4377480, at *2-3 (M.D. Fla. Sept. 22, 2022) (both factors); *Garrett v. Kijakazi*, No. 1:21-CV-00046-GCM, 2022 WL 1651454, at *3 (W.D. N.C. May 24, 2022) (supportability); *Rivera v. Comm'r of the Soc. Sec. Admin.*, No. 19-CV-4630 (LJL) (BCM), 2020 WL 8167136, at *15-17 (S.D. N.Y. Dec. 30, 2020) (supportability), *report and recommendation adopted*, 2021 WL 134945 (S.D. N.Y. Jan. 14, 2021).

It is undisputed that the ALJ did not address the supportability factor when considering the persuasiveness of Dr. Dickens' opinion as required by 20 C.F.R. §§ 404.1520c and 416.920c. The ALJ's failure to do so "is a legal error that warrants remand."[4] *Michael B.*, 2022 WL 4463901, at *2; *see Bonnett*, 859 F. App'x at 20; *Lucus*,

---

[4] This true notwithstanding "the adequacy of the ALJ's general summary of the evidence of record." *Pipkins*, 2022 WL 218898, at *4; *see Martini*, 2022 WL 705528, at *5. "[T]he Court may not decide the facts anew, reweigh the evidence, or substitute its own judgement for that of the [ALJ]." *Price*, 2022 WL 4377480, at *3. It is not the role of this Court to speculate on the reasons that might have supported the ALJ's decision or supply a reasoned basis for that decision that the ALJ never gave. *Encino Motorcars, LLC v. Navarro*, 136 S. Ct. 2117, 2127 (2016); *accord Nebraska v. U.S. Envtl. Prot. Agency*, 812 F.3d 662, 666 (8th Cir. 2016); *see also Nat'l R.R. Passenger Corp. v. Boston & Maine Corp.*, 503 U.S. 407, 420 (1992) ("We recognize the well-established rule that an agency's action may not be upheld on grounds other than those relied on by the agency." (citing *SEC v. Chenery Corp.*, 318 U.S. 80,

13

960 F.3d at 1070; *see also, e.g.*, *Starman*, 2021 WL 4459729, at *4-5; *Bonneau*, 2021 WL 92081, at *5-6.

On remand, the ALJ shall reconsider Dr. Dickens' opinion. If the ALJ finds that Dr. Dickens' opinion is unpersuasive, the ALJ shall articulate the reasons therefor, fully addressing the supportability and consistency factors as well as any other relevant factors, "so a reviewing court can make a meaningful assessment of a challenge to [the] ALJ's evaluation of the persuasiveness of . . . [the] medical opinion[]." *Hirner*, 2022 WL 3153720, at *9.

[Continued on next page.]

---

88 (1943))). Nor may the Court accept *post hoc* rationalizations from the Commissioner. *Oglala Sioux Tribe of Indians v. Andrus*, 603 F.2d 707, 715 n.7 (8th Cir. 1979) ("It is well established that an agency's action must be upheld, if at all, on the basis that was articulated by the agency itself, and that it cannot be sustained on the basis of post-hoc rationalizations of appellate counsel."); *see also Bonnett*, 859 F. App'x at 20; *Price*, 2022 WL 4377480, at *3.

# V. ORDER

Based upon the record, memoranda, and the proceedings herein, and for the reasons stated above, **IT IS HEREBY ORDERED** that:

1. Plaintiff's Motion for Summary Judgment, ECF No. 22, is **GRANTED IN PART** and **DENIED IN PART**.

2. The Commissioner's Motion for Summary Judgment, ECF No. 24, is **DENIED**.

3. This matter is **REMANDED** to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: March __29__, 2023               _____*s/ Tony N. Leung*_____
                                        Tony N. Leung
                                        United States Magistrate Judge
                                        District of Minnesota

                                        *Violet G. v. Kijakazi*
                                        Case No. 21-cv-2105 (TNL)